UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
JEFFREY PETERS,
            Plaintiff,

                                    DECISION & ORDER
        v.                          18-CV-6101-JWF

COMMISSIONER OF SOCIAL
SECURITY,
                Defendant.
                Preliminary Statement

    Plaintiff Jeffrey Peters ("plaintiff" or "Peters") brought
this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking
review of the final decision of the Commissioner of Social Security
("the Commissioner") denying his application for social security
income ("SSI") and disability insurance benefits ("DIB").  See
Compl. (Docket # 1).  Presently before the Court are the parties'
competing motions for judgment on the pleadings pursuant to Fed.
R. Civ. P. 12(c).  Docket ## 8, 11.  For the reasons that follow,
plaintiff's motion (Docket # 8) is **granted** and the Commissioner's
motion (Docket # 11) is **denied**.

## Procedural History

    Plaintiff filed his application for DIB on June 10, 2014, and
his application for SSI on June 11, 2014, alleging disability
beginning on June 10, 2013.  Administrative Record ("AR") at 150-
59.  Plaintiff's application for SSI was denied on September 15,
2014, his application for DIB was denied on June 16, 2014, and
plaintiff requested a hearing.  AR at 71-74, 76-90.  Plaintiff
appeared at the hearing before Administrative Law Judge John P.

1

Costello ("the ALJ") with his attorney, Ida Comerford, Esq., on October 17, 2016. AR at 26-69. Plaintiff and a vocational expert testified at the hearing. AR at 26-69.

The ALJ issued an unfavorable decision on January 13, 2017. AR at 14-22. Plaintiff timely filed a request for review by the Appeals Council. See AR at 148. On December 1, 2017, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR at 1-7. Plaintiff then commenced this appeal.

## Factual Background

For purposes of this Decision and Order, familiarity with the medical evidence, the hearing testimony, the ALJ's decision, and the five-step sequential process the Commissioner uses to determine eligibility for disability benefits is presumed.

At the time of the ALJ's decision, Jeffrey Peters was a 50-year-old gentleman with a tenth grade education who had a work history consisting of manual labor. From 1999 to 2004 he was a painter, and from 2004 to 2006 he was self-employed doing "[b]asement remodeling" projects. AR at 41, 186. In 2000, Mr. Peters "fell 12 feet to a concrete floor" and "cracked [his] head open," breaking several vertebra in the thoracic region of his back. AR at 47, 185, 233, 260.

Peters testified that he can only sit for "[a]bout a half an hour" before he needs to stand up and he can only stand for 10 to

2

15 minutes before "[t]he pain goes straight up [his] back and down [his] leg." AR at 50-51. He can walk less than one block before he has to sit down. AR at 51-52. His mother shops for him, though he can manage one house chore a day, including doing laundry which requires him to use the stairs. AR at 52, 57. Peters estimated he can lift "[a]bout 20 pounds." AR at 50. He wakes up three to four times per night because of his pain. AR at 53. Peters stated that he sits at home most days and is unable to work because of his constant pain upon exertion. AR at 46, 57, 58.

Although Peters' medical treatment history is limited, what is in the record corroborates his subjective complaints. See, e.g., AR at 270 (Dr. C. Michael Henderson opining that plaintiff is very limited in standing, walking, pushing, pulling, bending, and ability to lift/carry and moderately limited in sitting); AR at 234 (Dr. Pecherskaya Dzhakhan observing that plaintiff "stopped after the several steps due to the worsening of the pain" when asked to walk heel to toe); AR at 332 (radiology report showing "loss of signal from the intervertebral discs consistent with disc desiccation."). At the Commissioner's request, on August 20, 2014, plaintiff also appeared for an "Internal Medicine Examination" with Dr. Harbinder Toor. AR at 246-48. Dr. Toor found that plaintiff had moderate limitations with standing, walking, and sitting, and moderate to severe limitations with bending and lifting. AR at 248.

Based on the evidence in the record, the ALJ assigned plaintiff a residual functional capacity ("RFC") of light work[1] "except the claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders or scaffolds." AR at 17.

## Discussion

The standard of review requires that the Commissioner's decision be supported by substantial evidence. So long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. Acierno v. Barnhart, 475 F.3d 77, 80—81 (2d Cir. 2007) (quoting Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (internal citations and quotations omitted). Based on my review of the claimant's testimony, the medical record,

---

[1] "Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for up to two hours." Mancuso v. Astrue, 361 F. App'x 176, 178 (2d Cir. 2010) (citing 20 C.F.R. § 404.1567(b); Program Policy Statement, Titles II and XVI: Determining Capability To Do Other Work—The Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5-6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.")).

and medical opinions in evidence, the ALJ's opinion is not supported by substantial evidence.

Despite this deferential standard of review, there are certain legal principles and analytical standards that this Court is required to apply in reviewing the decision of the ALJ. One of them is making sure the ALJ met his obligation to adequately develop the medical record to ensure fair consideration of the disability claim.

ALJ's Duty to Develop the Record: An ALJ is required to develop a claimant's complete medical history.

> "Social Security proceedings are inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 110-11 (2000). Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." Sims, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)-(f)). This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).
>
> Whether the ALJ has met his duty to develop the record is a threshold question. Before reviewing whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided

plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." Scott v. Astrue, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)); see also Rodriguez v. Barnhart, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing Brown v. Apfel, 174 F.3d 59 (2d Cir. 1999)). The ALJ must develop the record even where the claimant has legal counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). Remand is appropriate where this duty is not discharged. See, e.g., Moran, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 261-62 (S.D.N.Y. 2016). The duty to develop the plaintiff's medical record is particularly important in cases where "the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed," Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) (citing Perez, 77 F.3d at 47) or where there is an obvious or "clear gap" in the record. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.").

As a threshold matter here, I find that the ALJ did not adequately develop the record regarding plaintiff's medical history. It is clear that plaintiff's claim is based primarily on

his allegations of severe and unremitting pain flowing from a 2000 injury he suffered when he fell and fractured his back in four places. Indeed, back problems (degenerative disc disease and lumbar spine impairments) were the only severe impairments considered by the ALJ in determining disability. AR at 16. Yet, there is little question that with respect to plaintiff's longstanding back problems, and particularly the fall in 2000 which was the genesis of his current alleged disability, the administrative record is incomplete and obvious gaps exists. In fact, the ALJ relied on these gaps in evaluating plaintiff's claims. In formulating the plaintiff's RFC, the ALJ stated: "In September 2012, the claimant reported to Rochester General Hospital for evaluation of back pain. He reported head and back trauma in 2000 from a 12-foot fall 'skull cracked opened' and several broken vertebra. However, treatment notes reported the claimant provided no medical records of the fall." AR at 17. (emphasis added).

During the hearing, plaintiff's attorney expressly alerted the ALJ to this and other missing information, including that "the application date here [in the current case] includes an onset date that invades" a prior social security application for which a medical file existed and that a Monroe County Department of Human Services ("DHS") exhibit was an "incomplete form." AR at 31-35. The ALJ held the record open for two weeks to "get updated

records." AR at 36. Plaintiff's attorney requested the prior medical file in "counsel's pre-hearing memorandum, at the hearing, and then in a telephone call to the ODAR office which was confirmed in writing," but the file is not in the record. Pl.'s Mot. (Docket # 8-1), at 12-13 (internal citations to the record omitted); AR at 218 (plaintiff's pre-hearing brief requesting "importation of prior medical file."); AR at 224 (correspondence with ODAR confirming telephone request that the prior folder be imported). In a similar case involving gaps in treatment records, Chief Judge Geraci recently found remand was appropriate to fully develop the record. See Petersen v. Comm'r of Soc. Sec., No. 18-CV-6143-FPG, 2019 WL 2051650, at *4 (W.D.N.Y. May 9, 2019) ("After the hearing, the ALJ left the record open and later provided an extension of time to the representative. But the ALJ never took any independent steps to develop the record. He did not attempt to obtain the records himself or even follow up with the representative to determine the status of the request or warn him that a decision would be made without the records. More is required from the ALJ." (internal citations omitted)).

The ALJ accorded a DHS physical assessment from 2016 "little weigh" [sic] because "it is unclear who performed the evaluation of the claimant" and "the assessment appears to be incomplete." AR at 20. However, plaintiff's attorney explicitly alerted the ALJ that the form was incomplete and the ALJ commented extensively

8

at the hearing that in order for the DHS assessment to be considered a medical source opinion it needed to be "fully transmitted." AR at 35-36. There is no evidence in the record that the ALJ followed up with counsel about the missing information, or that the ALJ independently attempted to obtain the missing medical records and pages of medical source statements or otherwise clarify who had filled out the assessment. The ALJ did not make the requisite "reasonable effort" to affirmatively develop the record and obtain missing information that he was expressly aware was not in the record and was clearly crucial to his decision. See 20 C.F.R. § 404.1512(b) (stating that the Social Security Administration agency must make "every reasonable effort" to obtain all medical evidence including an initial request for records and a follow-up request within ten to twenty days if records are not received); Petersen, 2019 WL 2051650, at *3-4 (citing Sotososa v. Colvin, No. 15-CV-854-FPG, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) (holding that where there was "no evidence that the ALJ followed up with Sotososa's counsel or attempted to obtain the missing records himself[,] [t]he ALJ did not satisfy his duty to develop the record just because he told Sotososa's attorney to obtain the missing records." (collecting cases))).

To the extent that the ALJ failed to develop the record because he believed, based on plaintiff's apparent limited

9

treatment, that there were no other records to be obtained, the ALJ had a duty to inquire of plaintiff's doctors further to seek clarification for existing evidence in the record and to determine if records were missing that could illuminate plaintiff's treatment history. See AR at 18-19; Correale-Englehart, 687 F. Supp. 2d at 428 ("Similarly, the ALJ has a duty to 'seek additional evidence or clarification from [the] medical source when a report from [that] medical source contains conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information.'" (quoting 20 C.F.R. § 404.1512(e)(1); citing Perez, 77 F.3d at 47; brackets in original)). For example, the ALJ discounted Dr. Henderson's opinion because he believed it to be based on Dr. Henderson's one and only meeting with the plaintiff. AR at 19. However, a full reading of the record reveals that what the ALJ reads as Dr. Henderson's treatment note saying "This it the first time I see this patient" (AR at 19) is actually Dr. Pecherskaya's treatment note that Dr. Henderson was referencing. AR at 226, 233. Further, there are treatment notes and a physical assessment form in the record from Dr. Henderson dated March 29, 2016, April 19, 2014, and September 24, 2012, but no notes in between those dates. AR at 226-33, 270. Especially given that Dr. Henderson was plaintiff's treating physician, there exists an obvious gap which the ALJ was obligated to attempt to fill by seeking clarification regarding the extent of Dr.

Henderson's treatment of plaintiff and/or missing treatment notes and records in between those dates if any. See Petersen, 2019 WL 2051650, at *3-4 (where treatment records of treating physician for plaintiff's back and neck pain were conspicuously absent from the record, holding ALJ was required to do more than just extend time for plaintiff's attorney to obtain records, such as follow up with plaintiff's attorney or independently develop the record); Samuels v. Barnhart, No. 01 Civ. 3661(MBM), 2003 WL 21108321, at *8 (S.D.N.Y. May 14, 2003) (where plaintiff alleged disability for, inter alia, back pain and related impairments, "[b]efore discounting Samuels' complaints of pain based on a lack of medical evidence, the ALJ should have determined whether the gap in the treatment notes was due to a lack of visits by Samuels or due to his not having had all the records before him.").

The gap in the medical record is particularly problematic given that the ALJ questioned whether Dr. C. Michael Henderson's opinion was that of a treating physician. AR at 20 ("Arguably, [Dr. Henderson's opinion] is not even a treating opinion at this point but an examining source opinion only under the regulations.") (internal parentheses omitted). Thus, as far as the ALJ was concerned, he had a record that contained treatment notes from Dr. Henderson, but no treating opinion to explain those notes, creating a need for an assessment of plaintiff's functional limitations. See Stanley v. Colvin, No. 6:12-CV-1899 (GTS), 2014 WL 1311963, at

*7 (N.D.N.Y. Mar. 31, 2014) ("Considering Plaintiff has identified Dr. Freund as her treating physician [for back pain], and considering Plaintiff's treatment with Dr. Freund's practice over the course of the relevant period as well as the lack of an assessment of Plaintiff's functional limitations during the relevant period, it was error for the ALJ to fail to seek his opinion regarding Plaintiff's functional limitations during that time."); Ubiles v. Astrue, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012) ("Granted, both of Dr. Laroche's notes [noting chronic back pain secondary to lumbar stenosis] failed to indicate Plaintiff's function-by-function limitations. However, they were simply notes from an office visit . . . . It was incumbent on the ALJ to request a function-by-function assessment of Plaintiff's physical limitations from Dr. Laroche . . . ."); Whitney v. Astrue, No. 09-CV-0484, 2010 WL 3023162, at *3 (W.D.N.Y. July 29, 2010) ("Dr. Haddad was Plaintiff's treating physician for at least 20 months and was responsible for providing medication for Plaintiff's back pain . . . . Nevertheless, the only evidence from Dr. Haddad in the record is one, unsigned page of an RFC report and a reference in the index that a MRI report and an electro-diagnostic consultation report came from his office. The treating physician's inexplicable failure to submit opinions regarding Plaintiff's disability does not absolve the ALJ of his duty to develop the record." (citing Smith v. Astrue, No.

1:05-CV-1433 (NAM), 2008 WL 4517810, at *7 (N.D.N.Y Sept. 30, 2008)
("[T]he ALJ has an affirmative obligation to obtain more than
'sparse notes' in the medical records from a treating physician.")
(internal citations to record omitted)).

The ALJ's failure to adequately develop the medical record
was not cured by having ordered a consultative examination. See
20 C.F.R. § 416.912 (providing for consultative examinations as a
means of developing the record). While the ALJ did order a
consultative examination from Dr. Harbinder Toor, he assigned that
opinion "partial weight," Dr. Henderson's September 24, 2012
opinion "little weight," and a DHS form filled out by Dr. Henderson
on March 29, 2016 "limited weight." AR at 19-20. But Dr. Toor's
opinion confirmed that plaintiff had "moderate to severe
limitation[s] bending and lifting. Pain sometimes interferes with
his balance." AR at 248 (emphasis added). Thus, even the
consultative examination did not support the RFC assigned by the
ALJ because the added "limitations" to light work still required
the plaintiff to occasionally balance, stoop, kneel, and crouch.
AR at 17. See Harnisher v. Apfel, 40 F. Supp. 2d 121, 131 (E.D.N.Y.
1999) (where plaintiff had lower back pain from falling off a
loading platform, finding the ALJ's opinion to have been
"constructed out of whole cloth" where "[e]ven Dr. Katz, the
Commissioner's own consultant, testified that plaintiff could not
sit more than an hour and a half and could not stand for more than

13

an hour."). Further, Dr. Toor's opinion was consistent with other medical evidence in the record, including Dr. Henderson's opinion that plaintiff was very limited in standing, walking, pushing, pulling, bending, and ability to lift/carry (AR at 270) and Dr. Dzhakhan's treatment notes observing that plaintiff "stopped after the several steps due to the worsening of the pain" when asked to walk heel to toe (AR at 234). See Smith v. Colvin, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'" (quoting Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005))).

Conclusion

Based on the foregoing, the ALJ did not fulfill his duty to develop the medical record regarding plaintiff's back injuries or his functional limitations. Accordingly. plaintiff's motion for judgment on the pleadings (Docket # 8) is **granted** and the Commissioner's motion for judgment on the pleadings (Docket # 11) is **denied**. The case is remanded for further proceedings consistent with this opinion.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     June 28, 2019
           Rochester, New York